STATE OF NORTH CAROLINA v. OMAR SIDY MBACKE, DEFENDANT

No. COA09-1395

(Filed 4 January 2011)

**1. Appeal and Error— preservation of issues—failure to give notice of appeal**

Although defendant contended that the trial court erred in a drugs case by denying his motion to suppress and denying his motions *in limine* at trial, defendant gave no written or oral notice of appeal from the judgment entered at the conclusion of the trial or from the order denying the motion to suppress. Thus, the only issue properly before the Court of Appeals was the trial court's denial of defendant's motion for appropriate relief.

**2. Appeal and Error— motion for appropriate relief—erroneous denial of motion to suppress evidence**

The trial court erred in a drugs case by denying defendant's motion for appropriate relief based on the denial of his request to suppress any evidence obtained by police as a result of a traffic stop. The warrantless search of defendant's vehicle incident to his arrest violated his Fourth Amendment rights because he was not within reaching distance of his vehicle, and there was not a reasonable basis for searching the vehicle for evidence of the offense for which defendant was arrested.

Judge STROUD dissenting.

Appeal by Defendant from order entered 16 June 2009 by Judge Ronald E. Spivey in Superior Court, Forsyth County. Heard in the Court of Appeals 14 April 2010.

*Attorney General Roy A. Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*Tin Fulton Walker & Owen, PLLC, by Noell P. Tin and Matthew G. Pruden, for Defendant-Appellant.*

McGEE, Judge.

Omar Sidy Mbacke (Defendant) appeals from the trial court's order denying his motion for appropriate relief. For the following reasons, we reverse.

I. Factual Background and Procedural History

Defendant was indicted on 12 May 2008 for trafficking in cocaine, possession with intent to sell and deliver cocaine, trafficking cocaine by transportation, and carrying a concealed weapon. A superseding indictment was issued on 23 June 2008, charging Defendant with carrying a concealed weapon and trafficking in cocaine by transportation. On 17 April 2009, Defendant moved to suppress "any and all evidence [obtained by police] as a result of a traffic stop, seizure and arrest of . . . Defendant" on or about 5 September 2007.

Immediately prior to trial, Defendant's motion to suppress was heard. The State's evidence tended to show that on 5 September 2007, officers from the Winston-Salem Police Department responded to a 911 call stating that a "black male . . . wearing a yellow shirt[,]" and "driving a red Ford Escape" was parked in the caller's driveway, armed with a handgun. Upon arriving at the caller's residence, officers "observed a maroon-red Ford Escape vehicle backing out of the driveway of the residence." The driver of the Ford Escape was a black male, wearing a yellow shirt. The officers exited their vehicles and, with their service weapons drawn, approached the Ford Escape and ordered the driver to stop and raise his hands in the air. The driver did not initially comply but, after repeated commands from the officers, he did stop and raise his hands. The officers then ordered the driver to exit the Ford Escape. The driver complied but, as he exited, he kicked the vehicle door shut. The driver was then placed in handcuffs. The driver of the maroon-red Ford Escape was identified at trial as Defendant. The officers advised Defendant that he was not under arrest but was being detained at the scene. In response to a question from the officers, Defendant informed them that he had a firearm concealed in his waistband. The officers removed a handgun from Defendant's waistband, placed Defendant under arrest, and

STATE v. MBACKE

[209 N.C. App. 35 (2011)]

secured him in the back of a patrol vehicle. The officers then conducted a search of the Ford Escape incident to arrest. The officers discovered "a cellophane-wrapped package that contained a white powdery substance" under the driver's seat of the Ford Escape. A field test of the substance revealed that it was cocaine.

Following a hearing on 20 April 2009 on Defendant's motion to suppress, the trial court denied Defendant's motion and filed a written order on 1 May 2009. A jury found Defendant guilty on all counts on 23 April 2009. Defendant was sentenced to two concurrent sentences of 175 to 219 months in prison and was fined $250,000.00. Pursuant to N.C. Gen. Stat. §§ 15A-1414(b)(1)(b) and 15A-1415(b)(7), Defendant filed a motion for appropriate relief on 1 May 2009, arguing that the trial court should have granted his motion to suppress and should dismiss the drug charges against him, based on the United States Supreme Court ruling in *Arizona v. Gant,* —— U.S. ——, 173 L. Ed. 2d 485 (2009), which was decided on 21 April 2009, during Defendant's trial. A hearing was held on Defendant's motion for appropriate relief on 20 May 2009. By order dated 16 June 2009, the trial court held that the ruling in *Gant* was applicable to Defendant's case, but that Defendant was not entitled to relief under *Gant* and thus denied Defendant's motion for appropriate relief. From the trial court's order denying his motion for appropriate relief, Defendant filed written notice of appeal on 23 June 2009.

[1] Defendant brings forth arguments that the trial court erred in: (1) denying his motion to suppress, (2) denying his motions in limine at trial, and (3) denying his motion for appropriate relief. However, Defendant gave no written or oral notice of appeal from the judgment entered at the conclusion of his trial or from the trial court's order denying his motion to suppress. As noted above, Defendant appealed only from the trial court's denial of his motion for appropriate relief.[1] Therefore, Defendant's assignments of error and arguments regarding errors committed by the trial court during his trial, and in denying his motion to suppress, are not properly before us. *See In re Cox,* 17 N.C.

---

1. Defendant's notice of appeal is very specific. It alleges that upon return of the jury's verdicts, "the [c]ourt sentenced the Defendant and entered judgment on April 24, 2009." The notice further sets out that *Gant* was decided during Defendant's trial; that upon conclusion of Defendant's trial, Defendant requested additional time to address the issues raised by *Gant*; and that Defendant therefore filed his motion for appropriate relief. The notice of appeal states that "an Order was issued on June 16, 2009 denying Defendant's Motion for Appropriate Relief" and that "Defendant by and through his undersigned counsel . . . hereby gives Notice of Appeal to the North Carolina Court of Appeals from the Judgment in the Superior Court of Forsyth County entered June 16, 2009."

App. 687, 690-91, 195 S.E.2d 132, 134 (1973) ("[P]roceedings on appeal are ordinarily strictly limited to review of matters directly affecting the judgment, order, or decree appealed from, and other decisions, whether rendered before or after that directly appealed from, are not before the court.") (citations omitted); N.C.R. App. P. 10(a). Therefore, Defendant's only issue properly before this Court is whether the trial court erred in denying Defendant's motion for appropriate relief.

[2] Defendant's only argument regarding the denial of his motion for appropriate relief is that the denial of his motion to suppress should be reversed, based on *Gant*. In Defendant's pre-trial motion to suppress, he raised several issues, including the officers' search of Defendant's vehicle incident to Defendant's arrest. However, at the pre-trial hearing on the motion to suppress, the main issue in contention was whether the officers had a sufficient articulable and reasonable suspicion to stop Defendant's vehicle. We note that the only issue addressed by *Gant* was the legality of the officers' search incident to a lawful arrest; *Gant* does not address the legality of the vehicle stop. Therefore, based upon Defendant's notice of appeal, our review is limited to the single issue regarding the search incident to a lawful arrest, as this is the only issue properly before us.

## II. Defendant's Motion for Appropriate Relief

Our Court has previously held that, "[w]hen a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and maybe disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal." *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (citations omitted). The trial court's order denying Defendant's motion for appropriate relief incorporated the findings of fact from its previous order denying Defendant's motion to suppress and made additional findings. The trial court made the following findings relevant to the search incident to Defendant's arrest in its initial order denying Defendant's motion to suppress:

> The officer testified and the [c]ourt will find that he told the driver to step out of the vehicle and raise his hands, and that initially the driver lowered his hands to some extent or moved them to some extent toward his waist area as he was seated in the vehicle. But then upon further re-command, he held his hands back up and was ordered out of the vehicle.

At that time a person who was driving the vehicle and the only occupant got out. It turned out to be . . . [D]efendant in this case. And as he did, the officer noted that . . . [D]efendant kicked the door shut with his foot.

At that time the person, now identified as . . . [D]efendant, did get onto the ground in a prone position, pursuant to the officer's orders.

At that time the officer holstered his service weapon and placed handcuffs on . . . [D]efendant as he lay there. He indicated to . . . [D]efendant orally that he was not under arrest, that he was being detained in handcuffs.

At that time he testified that he told the person on the ground, . . . [D]efendant in this case, why they were there and asked . . . [D]efendant if he had any guns or handguns, at which point . . . [D]efendant said, yes, that he had one in his waistband.

At that point the weapon was in fact retrieved from . . . [D]efendant's waistband and cleared and otherwise rendered safe for the moment, and . . . [D]efendant was then taken back to the officer's patrol car and seated there, now formally charged with carrying a concealed weapon.

During this time that he was in the vehicle of the first officer, Officer Horsley in fact looked into the vehicle, which was stopped, and indicated that he had found a package containing some white powder substance, which later tested positive for cocaine pursuant to a field test.

The trial court also found that "after seizing [the handgun], . . . [D]efendant was in fact placed in the police car and was in fact formally under arrest for carrying a concealed weapon, at which time a search incident to the arrest of the vehicle . . . was conducted[.]" In its order denying Defendant's motion for appropriate relief, the trial court made the following additional findings relevant to the search incident to Defendant's arrest for carrying a concealed weapon:

10. Officer Horsley searched . . . Defendant's vehicle after . . . Defendant was arrested, which was standard Winston-Salem Police Department procedure relying on the Supreme Court decision in New York v. Belton, 453 U.S. 454 (1981), in order to see if any contraband was located inside.

11. Officer Horsley found approximately one kilogram of powder cocaine, packaged in plastic wrap. It was found under the driver's seat of . . . Defendant's vehicle, and it was half under the seat and half sticking out into the floorboard in front.

In its denial of Defendant's motion for appropriate relief, the trial court concluded:

11. Based on all the evidence presented, this [c]ourt rules that . . . Defendant in this case was secured and not within reaching distance of the passenger compartment of the vehicle at the time of the search.

12. This [c]ourt further rules that the officers in this case had reason to believe that evidence of the Carrying a Concealed Gun charge, for which . . . Defendant was arrested, and the report of a man with a gun at that location pursuant to the 911 call, would be located in the interior of . . . Defendant's vehicle.

13. Such evidence could include other firearms, gun boxes, holsters, ammunition, spent shell casings and other indicia of ownership of the firearm that was seized from . . . Defendant's person.

14. The case at bar is distinguishable from the case in Arizona v. Gant, where there was no reason for the officers to believe that additional evidence related to the offense of Driving While License Revoked would be located in Gant's vehicle.

The trial court therefore denied Defendant's motion for appropriate relief.

This Court has previously held that "[w]here . . . the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Hudgins*, 195 N.C. App. 430, 432, 672 S.E.2d 717, 718 (2009) (citations omitted). Defendant did not assign error to the trial court's findings of fact in the order denying his motion to suppress or in the order denying his motion for appropriate relief. Therefore, those findings are binding on appeal. *See id.* Accordingly, our remaining analysis will focus on whether the trial court's findings support its conclusions of law and *de novo* review of the trial court's conclusions of law regarding the search of Defendant's vehicle incident to his arrest. *Lutz*, 177 N.C. App. at 142, 628 S.E.2d at 35.

Defendant argues that the trial court erred in denying his motion for appropriate relief because the warrantless search of his vehicle was in violation of his rights under the Fourth Amendment of the United States Constitution. Specifically, Defendant contends that the warrantless search ·of his vehicle incident to his arrest was in violation of the rule established by the United States Supreme Court in *Gant* because (1) he was "handcuffed and placed in the patrol car" at the time of the search and was not within reaching distance of the passenger compartment and (2) there was no reason to further investigate the offense of carrying a concealed weapon with a search of Defendant's vehicle because no further relevant evidence could be found as the concealed handgun at issue had already been discovered on Defendant's person.

In *Gant*, two police officers came into contact with the defendant at a private residence. *Id.* at ——, 173 L. Ed. 2d at 491. "The officers left the residence and conducted a records check, which revealed that [the defendant's] driver's license had been suspended and there was an outstanding warrant for his arrest for driving with a suspended license." *Id.* The officers returned to the private residence and observed the defendant return to the residence, park at the end of the driveway, get out of his vehicle, and shut the door. *Id.* at ——, 173 L. Ed. 2d at 492. The officers immediately approached the defendant, handcuffed him, and placed him under arrest for driving while his license was suspended. *Id.* When backup arrived, the officers locked the defendant in the back seat of a patrol vehicle, conducted a search of the defendant's vehicle, and found a gun and narcotics. *Id.*

The defendant was charged with possession of narcotics and possession of drug paraphernalia. *Id.* The defendant moved to suppress the evidence seized from his vehicle on the grounds that the warrantless search violated the Fourth Amendment. *Id.* The trial court denied the defendant's motion to suppress; the Arizona Supreme Court concluded that the search of the defendant's vehicle was unreasonable and reversed the trial court's denial of the defendant's motion to suppress; and the state petitioned for writ of certiorari to the United States Supreme Court. *Id.* at ——, 173 L. Ed. 2d at 492-93.

The United States Supreme Court stated the basic rule that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established

and well-delineated exceptions.' " *Id.* at ——, 173 L. Ed. 2d at 493 (quoting *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967)). The Court noted that "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* In *Gant,* the Court recognized that in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685 (1960), "a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control" —— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' " *Gant,* —— U.S. at ——, 173 L. Ed. 2d at 493 (quoting *Chimel,* 395 U.S. at 763, 23 L. Ed. 2d at 694). The Court also noted that the rule in *Chimel* was applied in *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768 (1981), in the context of a search of the defendant's automobile, and the Court held that "when an officer lawfully arrests 'the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile' and any containers therein." *Gant,* —— U.S. at ——, 173 L. Ed. 2d at 494 (quoting *Belton,* 453 U.S. at 460, 69 L. Ed. 2d at 775). The Court acknowledged that the rule in *Belton* had "been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at ——, 173 L. Ed. 2d at 495. The Court also noted that

> [a]lthough it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." . . . . In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. . . . But in others, including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id.* at ——, 173 L. Ed. 2d at 496 (citations omitted).[2] In further clarifying its prior rulings regarding the exception to the warrant requirement for searches incident to a lawful arrest, the Court held that

> [p]olice may search a vehicle incident to a recent occupant's arrest only if [(1)] the arrestee is within reaching distance of the

---

2. In *Belton* and *Thornton,* the defendants were initially arrested on drug charges. *See Thornton v. United States,* 541 U.S. 615, 158 L. Ed. 2d 905 (2004); *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768 (1981).

passenger compartment at the time of the search or [(2)] it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at ——, 173 L. Ed. 2d at 501. The United States Supreme Court affirmed the Arizona Supreme Court's conclusion that the search of the defendant's vehicle was unreasonable, as the defendant was not "within reaching distance of the passenger compartment at the time of the search" and it was not reasonable for the officers to believe that the vehicle would contain evidence of the offense of arrest, which was defendant's driving while his license was suspended. *Id.*

The State counters in the present case that, as permitted by *Gant*, when officers searched Defendant's vehicle, "they had reason to believe they would find evidence in the vehicle supporting the charge for which they had arrested [D]efendant[.]" The State explains that "had [D]efendant contested the concealed weapon charge, [the State] could have been required to use evidence" such as other firearms, gun boxes, holsters, ammunition, spent shell casings or other indicia of ownership of the firearm

> to rebut claims by . . . [D]efendant of good faith mistake, inadvertence, duress or that he was not aware he had placed the gun in the waist band of his trousers. Without knowing what claims [D]efendant would eventually make, the officers were justified in searching for additional evidence establishing [D]efendant['s] intent to carry a concealed handgun.

We disagree with the State's reasoning because we perceive two problems arising from the highly fact-driven nature of the analysis required under *Gant*. First, the defenses of a good faith mistake, duress, or inadvertence could have also applied to traffic offenses such as that involved in *Gant*, where, for example, the defendant could have argued that he was driving without a license while under circumstances of duress. *See e.g., State v. Brown*, 182 N.C. App. 115, 646 S.E.2d 775 (2007) (discussing the applicability of the defense of duress to motor vehicle charges). We interpret the Supreme Court's holding in *Gant* to require an officer to suspect the presence of more direct evidence of the crime of arrest than the highly indirect circumstantial evidence the State contends may be necessary to rebut possible defenses.

Second, we do not believe that the hypothetical evidence posited by the State, and set forth in the trial court's findings of fact, would be relevant to the crime of carrying a concealed weapon. The trial court concluded that the following evidence would be helpful in establishing Defendant's intent: "other firearms, gun boxes, holsters, ammunition, spent shell casings and other indicia of ownership of the firearm that was seized from . . . Defendant's person." This evidence may be generally classified in two categories: (1) evidence of separate offenses; and (2) evidence unrelated to the offense of carrying a concealed weapon.

With respect to the hypothetical evidence of separate offenses, if the officers had discovered another concealed weapon in Defendant's vehicle, they would have been justified in charging Defendant with an additional count of carrying a concealed weapon. *See State v. Johnson*, 149 N.C. App. 669, 562 S.E.2d 606, 2002 WL 485386 (2002) (unpublished opinion) (reviewing appeal of defendant charged with two counts of carrying a concealed weapon where the defendant inadvertently revealed one handgun concealed beneath a stack of newspapers in his vehicle and officers later discovered a second handgun concealed in the vehicle). While *Gant* does authorize officers to search a vehicle when they have reasonable grounds to believe they may find evidence in the vehicle related to the offense of arrest, we do not interpret *Gant* as authorizing officers to search vehicles for evidence justifying additional charges. *See Gant*, 556 U.S. at ——, 173 L. Ed. 2d at 498 (discussing *United States v. Ross*, 456 U.S. 798, 820-21, 72 L. Ed. 2d 572 (1982), and noting that *Ross* allows a search of portions of a vehicle for evidence of other crimes based on probable cause to believe the vehicle contains evidence of criminal activity, rather than the lower standard of a reasonable basis to believe the evidence will be found in the vehicle).

With respect to the evidence the State contends would be relevant to proving Defendant's intent to carry a concealed weapon, N.C. Gen. Stat. § 14-269(a1) provides that it is unlawful for "any person willfully and intentionally to carry concealed about his person any pistol or gun except [when]. . . [t]he person is on the person's own premises." N.C. Gen. Stat. § 14-269(a1) (2009). Our Supreme Court has stated the elements of this crime in the following manner: "The essential elements of the statutory crime of carrying a deadly weapon are these: (1) The accused must be off his own premises; (2) he must carry a deadly weapon; (3) the weapon must be concealed about his person." *State v. Williamson*, 238 N.C. 652, 654,

STATE v. MBACKE

[209 N.C. App. 35 (2011)]

78 S.E.2d 763, 765 (1953). Intent is an essential element required by N.C.G.S. § 14-269(a1); however, our Supreme Court has long held that "[t]he criminal intent in such cases is the intent to carry the weapon concealed." *State v. Dixon*, 114 N.C. 850, 852, 19 S.E. 364, 364 (1894). Thus, the focus of the crime is whether a defendant carried a weapon, while outside his own premises, and intentionally concealed that weapon about his person. We therefore disagree with the trial court's reasoning that the officers had reasonable grounds to believe they would find evidence in Defendant's vehicle to support any of these elements.

The trial court also supposed hypothetical evidence of "gun boxes, holsters, ammunition, spent shell casings and other indicia of ownership of the firearm." We disagree with the trial court's reasoning that a handgun holster, found unused in Defendant's vehicle, was relevant to proving Defendant's intent at the time the officers found him in possession of a handgun concealed in his waistband. Further, neither ownership nor use of a weapon are elements of carrying a concealed weapon. *Williamson*, 238 N.C. at 654, 78 S.E.2d at 765. Therefore, we hold that evidence of ownership or use is irrelevant to the charge. Likewise, evidence of a gun box is similarly not proof of any element of the charge. *Id.* As with the traffic offenses discussed in *Gant*, we find it unreasonable to believe an officer will find in, or even need to seek from, a defendant's vehicle further evidence of carrying a concealed weapon when the officer has found the defendant off the defendant's own premises and carrying a weapon which is concealed about his person.

Thus, we hold that it was not "reasonable to believe [Defendant's] vehicle contain[ed] evidence of the offense" of carrying a concealed weapon. *Gant*, 556 U.S. ——, 173 L. Ed. 2d at 501. Because Defendant was not within reaching distance of his vehicle, and the fact that there was not a reasonable basis for searching the vehicle for evidence of the offense for which Defendant was arrested, the search violated Defendant's Fourth Amendment rights, pursuant to *Gant*. We therefore reverse the denial of Defendant's motion for appropriate relief.

Reversed.

Judge HUNTER, JR. concurs.

Judge STROUD dissents with a separate opinion.

STROUD, Judge, dissenting.

I respectfully dissent, as I believe that the majority opinion applies *Arizona v. Gant*, —— U.S. ——, 173 L. Ed. 2d 485 (2009) incorrectly. The majority opinion's view of the "reasonableness" of the officers' belief that the vehicle may contain evidence of the offense of arrest is too narrow, and this application of *Gant* may seriously impair the ability of law enforcement officers to perform their job of responding to emergency calls and investigating potential crimes at these calls.

The majority has accurately and fully set forth the facts of the case and the trial court's findings and conclusions, so I will not reiterate them here except as necessary. The majority notes and rejects the State's argument that when the officers searched defendant's vehicle, "they had reason to believe they would find evidence in the vehicle supporting the charge for which they had arrested defendant[.]" The State argued that "had defendant contested the concealed weapon charge, [the State] could have been required to use evidence" such as other firearms, gun boxes, holsters, ammunition, spent shell casings or other indicia of ownership of the firearm

> to rebut claims by the defendant of good faith mistake, inadvertence, duress or that he was not aware he had placed the gun in the waist band of his trousers. Without knowing what claims defendant would eventually make, the officers were justified in searching for additional evidence establishing defendant['s] intent to carry a concealed handgun.

The majority rejects the State's reasoning, as well as that of the trial court, but I do not. Here, the trial court's findings establish that defendant was arrested for carrying a concealed weapon and before the officers conducted a search of defendant's vehicle incident to that arrest, defendant was handcuffed and secured in the back of a patrol vehicle. Therefore, as in *Gant*, defendant was not "within reaching distance of the passenger compartment at the time of the search." *See id.* at ——, 173 L. Ed. 2d at 501. In contrast to *Gant*, defendant was not arrested for a traffic offense but for carrying a concealed weapon in violation of N.C. Gen. Stat. § 14-269(a1) (2007), which states that "[i]t shall be unlawful for any person willfully and intentionally to carry concealed about his person any pistol or gun . . . ." An essential element of this crime is the intent to carry the weapon concealed. *See State v. Reams*, 121 N.C. 556, 557, 27 S.E. 1004, 1005 (1897) ("The offense of carrying a concealed weapon about one's person and off his own premises consists in the guilty intent to carry it concealed . . . and the possession of the weapon raises the presumption of guilt,

which presumption may be rebutted by the defendant."). If defendant at trial had argued that he lacked the intent to conceal the weapon found on his person because of a good faith mistake, duress, or inadvertence, the State would have been required to produce evidence to counter those claims. Evidence that would be helpful in establishing defendant's intent that could have been discovered in defendant's vehicle might include other concealed firearms in the vehicle or a concealed handgun holster, lock-box, or storage-case; officers could have also discovered other indicia of ownership or use of the firearm seized such as ammunition or spent shell casings.

The majority rejects the "hypothetical evidence posited by the State, and set forth in the trial court's findings of fact" as irrelevant to the crime of carrying a concealed weapon. However, I disagree, as the potential items of evidence listed were those identified in the uncontested findings of fact of the trial court, based upon the State's evidence. In addition, the law supports the State's argument that such evidence may be relevant to the charge of carrying a concealed weapon. I do not believe that this Court should substitute its judgment for that of the trial court as to this uncontested finding of fact. *See State v. High,* 183 N.C. App. 443, 447, 645 S.E.2d 394, 396-97 (2007) (holding that the trial court's uncontested findings of facts were binding on appeal).

I also believe that we must consider reasonableness in the context of the situation to which the officers were responding. They were responding to a 911 call in which a citizen, Mr. Hall, reported that a man armed with a gun was in his driveway and that the same man had "shot up" his house the night before. When the first officer arrived about three minutes after the call, he found defendant exactly as Mr. Hall described in a car in the driveway. The officers were not responding to a call reporting that defendant, or anyone else, had a concealed weapon; they were first and foremost seeking to prevent anyone from being shot and to protect the public from a man with a gun. They had no way of knowing, upon responding to the call, exactly what they would find or how dangerous the situation would be. Fortunately, no shots were fired and no one was injured. However, the majority's opinion requires the officers to make immediate and very fine legal distinctions about what evidence is or is not related to the exact offense for which they have arrested a defendant—even if they might have arrested him for other offenses as well. The officers' actions in this situation were entirely reasonable. *See Brinegar v. United States,* 338 U.S. 160, 176, 93 L. Ed. 1879, 1891

(1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."). I therefore agree with the trial court that it was "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." *Gant*, —— U.S. at ——, 173 L. Ed. 2d at 501.

Accordingly, I would hold that the trial court's findings of fact support its conclusions of law, that the search of defendant's vehicle following his arrest was lawful, and I would affirm the denial of defendant's motion for appropriate relief.