STATE v. MBACKE

[365 N.C. 403 (2012)]

STATE OF NORTH CAROLINA v. OMAR SIDY MBACKE

No. 33A11

(Filed 27 January 2012)

## Search and Seizure— search and seizure—search incident to arrest—vehicular search—reasonable belief—additional evidence of offence of arrest

The trial court did not err in a trafficking in cocaine by possession, trafficking in cocaine by transportation, possession with intent to sell and deliver cocaine, and carrying a concealed gun case by applying *Arizona v. Gant*, 556 U.S. 332, and denying defendant's motion for appropriate relief. When investigators have a reasonable and articulable basis to believe that evidence of the offense of arrest might be found in the suspect's vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a search of that vehicle. Defendant's actions the night before he was arrested for the offense of carrying a concealed gun and defendant's furtive behavior when confronted by officers supported a finding that it was reasonable to believe that additional evidence could be found in defendant's vehicle. Accordingly, the police officers' search of defendant's vehicle after defendant had been secured in the back of a police car at the time of the search was permissible under *Gant*.

Justice TIMMONS-GOODSON dissenting.

Appeal pursuant to N.C.G.S. § 7A 30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 703 S.E.2d 823 (2012), reversing an order denying defendant's motion for appropriate relief entered on 16 June 2009 by Judge Ronald E. Spivey in Superior Court, Forsyth County. Heard in the Supreme Court on 6 September 2011.

*Roy Cooper, Attorney General, by Martin T. McCracken, Assistant Attorney General, for the State-appellant.*

*Tin Fulton Walker & Owen, PLLC, by Noell P. Tin and Matthew G. Pruden, for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the search of defendant Omar Sidy Mbacke's automobile following his arrest for carrying a concealed gun violated his Fourth Amendment right against unreasonable

searches and seizures. Because it was reasonable for the arresting officers to believe that they might find evidence of the offense of arrest in defendant's vehicle, we conclude that defendant's rights were not violated. Accordingly, we reverse the Court of Appeals decision and instruct that court to reinstate the trial court's denial of defendant's motion for appropriate relief.

Defendant was indicted for the offenses of trafficking in cocaine by possession, trafficking in cocaine by transportation, possession with intent to sell and deliver cocaine, and carrying a concealed gun. Prior to trial, defendant filed a motion to suppress evidence seized from his vehicle during a search that was conducted only after officers had arrested him and placed him in a police car. The trial court held a hearing on defendant's motion, during which the State presented evidence that on 5 September 2007, Winston-Salem police officers were dispatched to 1412 West Academy Street in response to a 911 call placed by Sala Hall. Hall reported that a black male who was armed with a black handgun, wearing a yellow shirt, and driving a red Ford Escape was parked in his driveway. Hall added that the male had "shot up" his house the previous night. The dispatcher relayed this information to the officers.

Officers Walley and Horsley arrived at the scene at approximately 3:08 p.m., less than six minutes after Hall called 911. They observed a black male (later identified as defendant) who was wearing a yellow shirt and backing a red or maroon Ford Escape out of the driveway at the reported address. The officers exited their patrol cars, drew their service weapons, and moved toward defendant while ordering him to stop his car and put his hands in the air. At about the same time, Officer Woods arrived and blocked the driveway to prevent the Escape's escape.

Defendant initially rested his hands on his vehicle's steering wheel, but then lowered his hands towards his waist. In response, the officers began shouting louder commands to defendant to keep his hands in sight and to exit his vehicle. Defendant raised his hands and stepped out of his car, kicking or bumping the driver's door shut as he emerged. The officers ordered defendant to lie on the ground and then handcuffed him, advising him that while they were not arresting him, they were detaining him because they had received a report that a person matching his description was carrying a weapon. In response to a question from the officers, defendant said that he had a gun in his waistband. Officer Walley lifted defendant's shirt and saw

a black handgun. After Officer Woods retrieved the pistol and rendered it safe, defendant was arrested for the offense of carrying a concealed gun.

The officers secured defendant in the back seat of a patrol car, then returned to defendant's Escape and opened the front door on the driver's side. Officer Horsley immediately saw a white brick wrapped in green plastic protruding from beneath the driver's seat where defendant had been sitting. As Officer Horsley was showing Officer Walley what he had found, defendant slipped one hand out of his handcuffs, reached through the partially opened window of the police car in which he had been placed, and attempted to open the vehicle door using the exterior handle. After resecuring defendant, the officers searched the entirety of his car incident to the arrest but found no other contraband. A field test of powdery material from the white brick was positive for cocaine, and a subsequent analysis by the State Bureau of Investigation laboratory determined that the brick consisted of 993.8 grams of cocaine.

At the conclusion of the suppression hearing, the trial court made oral findings of fact and conclusions of law, then denied defendant's motion to suppress. These findings of fact and conclusions of law were later set out in a written order issued by the court after defendant's trial.

When the case was called for trial, defense counsel confirmed with the trial court that his objection to the trial court's denial of his motion to suppress was on the record. Later that day, defense counsel renewed the motion to suppress, bringing to the court's attention a case that had been issued just that morning by the Supreme Court of the United States, *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). After some discussion with the trial judge, defense counsel advised the court that he would not ask for a hearing during the trial on the applicability of *Gant*, but instead would pursue that particular issue via a motion for appropriate relief. As a result of defense counsel's decision not to seek an immediate ruling on the effect of *Gant*, the trial court's pretrial denial of defendant's motion to suppress stood unaffected. Defense counsel preserved his objection by objecting during trial when the State elicited testimony from the officers regarding the search and by renewing his motion to suppress at the close of the State's evidence. The objection was overruled and the renewed motion denied.

STATE v. MBACKE

[365 N.C. 403 (2012)]

The jury found defendant guilty of all charges. The trial court sentenced defendant to concurrent terms of 175 to 219 months of imprisonment.

On 1 May 2009, defense counsel timely filed a motion for appropriate relief. In it, defense counsel argued that *Gant* retroactively applied to defendant's case and that the evidence found in the vehicle should be suppressed pursuant to *Gant's* analysis of searches incident to arrest. At a 20 May 2009 hearing, the State presented additional evidence regarding the search. After applying *Gant* to all the evidence presented, the trial court denied the motion for appropriate relief in an order entered on 16 June 2009.

Defendant appealed. Although defendant addressed five assignments of error in his brief, the Court of Appeals observed that defendant's notice of appeal raised only the trial court's denial of his motion for appropriate relief. —— N.C. App. ——, ——, 703 S.E.2d 823, 825 (2012). Accordingly, the Court of Appeals limited its review to that issue. *Id.* at ——, 703 S.E.2d at 825-26.

The Court of Appeals majority reversed the trial court's decision, holding that "it was not 'reasonable to believe [Defendant's] vehicle contain[ed] evidence of the offense' of carrying a concealed weapon." *Id.* at ——, 703 S.E.2d at 830 (alterations in original) (quoting *Gant*, 556 U.S. at ——, 129 S. Ct. at 1723, 173 L. Ed. 2d at 501). The dissenting judge disagreed, arguing that evidence of intent to conceal the weapon, or "indicia of ownership or use of the firearm seized," or both, could have been in the car. *Id.* at ——, 703 S.E.2d at 831 (Stroud, J., dissenting). In addition, the dissenting judge argued that, under the facts presented here, the officers' actions were reasonable. *Id.* at ——, 703 S.E.2d at 831. The State appealed to this Court on the basis of the dissent.

When reviewing a trial court's ruling on a motion for appropriate relief, the appellate court must "determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982). "If no exceptions are taken to findings of fact [made in a ruling on a motion for appropriate relief], 'such findings are presumed to be supported by competent evidence and are binding on appeal.' " *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (quoting *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)). In such a case, the reviewing court considers only "whether the conclusions of law are supported by the findings, a

question of law fully reviewable on appeal." *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005) (citations omitted), *cert. denied*, 547 U.S. 1073, 126 S. Ct. 1773, 164 L. Ed. 2d 523 (2006). Accordingly, because defendant did not assign error to any of the trial court's findings of fact, we review only the trial court's conclusions of law.

Our review necessarily begins with a discussion of *Arizona v. Gant*, in which the Supreme Court considered whether searching an automobile incident to arrest violated the defendant driver's Fourth Amendment rights when he had been arrested for a traffic offense only and had no access to his car at the time of the search. 556 U.S. at ——, 129 S. Ct. at 1714-15, 173 L. Ed. 2d at 491-92. *Gant's* car was not searched until he had been arrested, handcuffed, and locked in the back of a patrol car. *Id.* at ——, 129 S. Ct. at 1715, 173 L. Ed. 2d at 492. Although the officers had no apparent reason to suspect at the time of the search that Gant's vehicle contained any contraband, they found cocaine and a weapon in the car. *Id.* at ——, 129 S. Ct. at 1715, 173 L. Ed. 2d at 492.

The Supreme Court's analysis of the propriety of the search focused on its opinion in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), in which the Court held that an officer may search the passenger area of a vehicle incident to the arrest of the driver. *Gant*, 556 U.S. at ——, 129 S. Ct. at 1716-23, 173 L. Ed. 2d at 493-501 (citing *Belton*, 453 U.S. at 460, 101 S. Ct. at 2864, 69 L. Ed. 2d at 774-75). The majority in *Gant* noted that the Court in *Belton* had reasoned that such an approach was consistent with the purposes set out in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), of ensuring both police officer safety and the preservation of evidence. *Gant*, 556 U.S. at ——, 129 S. Ct. at 1716-18, 173 L. Ed. 2d at 493-95. However, the Supreme Court observed in *Gant* that many lower courts had interpreted *Belton* expansively "to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at ——, 129 S. Ct. at 1718, 173 L. Ed. 2d at 495. The majority in *Gant* concluded that such broad readings undermined *Belton's* and *Chimel's* dual rationales. *Id.* at ——, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496.

The Court repudiated these interpretations and limited *Belton's* application by holding that when a defendant is arrested, the defendant's car can be searched "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of

the search" or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at ——, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496 (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed. 2d 905, 920 (2004) (Scalia & Ginsburg, JJ., concurring in the judgment)).

In its conclusions of law, the trial court here found that "[t]here has been no change in circumstances or in the Law to warrant the Court setting aside its ruling on [defendant's] Pre-trial Motion" because "[t]he main issue of contention in the Pre-trial Motion to Suppress was whether the Winston-Salem Police officers involved had a sufficient articulable and reasonable suspicion to stop the Defendant's vehicle. This issue was not affected by the Supreme Court's ruling in *Arizona v. Gant.*" This conclusion by the trial court remains unchallenged.

The trial court then turned its attention to the applicability of *Gant* to defendant's motion for appropriate relief and found that defendant had been secured in a police vehicle and was not within reaching distance of the passenger compartment of his car when officers searched his vehicle. Thus, no search was permitted under the first alternative set out in *Gant.* However, as to *Gant's* second prong, the trial court found that defendant had been arrested for carrying a concealed gun and that the officers had reason to believe that evidence of the offense of arrest, such as "other firearms, gun boxes, holsters, ammunition, spent shell casings and other indicia of ownership of the firearm" "would be located in the interior of the Defendant's vehicle." Concluding that *Gant* did not foreclose the search of a vehicle pursuant to an arrest under those circumstances, the trial court denied the motion.

The Supreme Court subsequently has left no doubt that *Gant* applies to the case at bar because defendant's case was "'not yet final'" when *Gant* was decided. *Davis v. United States,* 564 U.S. ——, ——, 131 S. Ct. 2419, 2430-31, 180 L. Ed. 2d 285, 298 (2011) (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649, 661 (1987)) (stating that *Gant* applies retroactively to such cases). Accordingly, we must consider whether the trial court properly applied the holding in *Gant* to the evidence at bar when it denied defendant's motion for appropriate relief.

Despite defendant's apparent attempt to escape the police car in which he had been confined, the trial court was correct in finding that *Gant's* first prong did not permit a search because defendant was

neither unsecured nor within reaching distance of the passenger compartment of his car at the time of the search. Our inquiry must then focus on whether it was reasonable for the police to believe that defendant's vehicle might contain evidence of the crime of arrest. *See Gant*, 556 U.S. at ——, ——, 129 S. Ct. at 1714, 1719, 173 L. Ed. 2d at 491, 496-97.

Because the Supreme Court did not define the term "reasonable to believe," some analysis is appropriate to provide guidance to law enforcement personnel who must apply *Gant* in their daily work. Despite the suggestion in *United States v. Williams*, 616 F.3d 760, 764-65 (8th Cir. 2010), *cert. denied*, —— U.S. ——, 131 S. Ct. 1548, 179 L. Ed. 2d 310 (2011), that "probable cause" and "reasonable to believe" are equivalent concepts, we are satisfied that the reasonable to believe standard enunciated in *Gant* establishes a threshold lower than probable cause. *See United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir.) ("Presumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant's* evidentiary rationale would merely duplicate the 'automobile exception,' which the Court [in *Gant*] specifically identified as a distinct exception to the warrant requirement."), *cert. denied*, —— U.S. ——, 131 S. Ct. 93, 178 L. Ed. 2d 58 (2010).

Instead, we conclude that the "reasonable to believe" standard set out in *Gant* parallels the objective "reasonable suspicion" standard sufficient to justify a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968). Although the rationales for the two standards differ somewhat, in that *Gant* addresses officer safety and evidence preservation, *Gant*, 556 U.S. at ——, ——, 129 S. Ct. at 1715-16, 1719, 173 L. Ed. 2d at 492-93, 496-97, while *Terry* addresses "effective crime prevention and detection" along with officer and public safety, *Terry*, 392 U.S. at 22-24, 88 S. Ct. at 1880-81, 20 L. Ed. 2d at 906-08, we believe the underlying concept of a reasonable articulable suspicion discussed in *Terry*, *id*. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906, is readily adaptable to a scenario in which a search of a vehicle is contemplated after the occupants have been arrested and detained. *See also United States v. Place*, 462 U.S. 696, 702, 103 S. Ct. 2637, 2642, 77 L. Ed. 2d 110, 117-18 (1983) (explicitly adopting the "reasonable, articulable suspicion" standard implied in *Terry*). In addition, law enforcement officers and courts have worked with the *Terry* standard for decades, making application of *Gant's* similar objective standard a straightforward matter. Accordingly, we hold that when investigators have a reasonable and articulable basis to believe that evidence of the offense of arrest might be found in a suspect's

vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a search of that vehicle.

Here, defendant was arrested for the offense of carrying a concealed gun. The arrest was based upon defendant's disclosure that the weapon was under his shirt. Other circumstances detailed above, such as the report of defendant's actions the night before and defendant's furtive behavior when confronted by officers, support a finding that it was reasonable to believe additional evidence of the offense of arrest could be found in defendant's vehicle. Accordingly, the search was permissible under *Gant,* and the trial court properly denied defendant's motion for appropriate relief.

Our holding is consistent with the results reached by other courts. Although we are not bound by these cases, we consider their analyses informative. *See State v. Warren,* 252 N.C. 690, 696, 114 S.E.2d 660, 666 (1960) (noting that North Carolina is "not bound by the decisions of the Courts of the other States," but that "overwhelming authority" in favor of a certain interpretation of law is "highly persuasive"). In general, courts examining an offense involving weapons have inferred that the offense, by its nature, ordinarily makes it reasonable to believe the defendant's car will contain evidence of that offense, so that searching a defendant's car incident to an arrest for a weapons offense is almost always consistent with the Fourth Amendment. *See, e.g., United States v. Rochelle,* 422 F. App'x 275, 277 (4th Cir.) (unpublished per curiam decision) (finding that officers had reason to believe the defendant's vehicle contained evidence of the offense of arrest, unlawful firearms possession), *cert. denied,* —— U.S. ——, 132 S. Ct. 438, 181 L. Ed. 2d 285 (2012); *Vinton,* 594 F.3d at 25-26 (same after arrest for possession of a prohibited weapon); *United States v. Leak,* No. 3:09-cr-81-W, 2010 WL 1418227, at *5 (W.D.N.C. Apr. 5, 2010) (same after arrest for both driving with a suspended license and carrying a concealed weapon); *United States v. Wade,* No. 09-462, 2010 WL 1254263, at *2-3, *5 (E.D. Pa. Mar. 29, 2010) (finding that the officer had reason to believe the defendant's jacket, which the defendant had left in the car in which he had been riding when the police approached, might contain additional evidence of the offense of arrest, illegal possession of a firearm), *aff'd on other grounds,* —— F. App'x ——, No. 10-3847, 2011 WL 5524995 (3d Cir. Nov. 14, 2011) (unpublished); *People v. Osborne,* 96 Cal. Rptr. 3d 696, 698, 705, 175 Cal. App. 4th 1052, 1056-57, 1065 (concluding that officers had reason to believe the car the defendant appeared to be burglarizing at the time of his apprehension would

contain evidence relating to the offense of arrest, illegal possession of a firearm), *rev. denied*, No. S175724, 2009 Cal. LEXIS 11474 (Oct. 28, 2009). *But see United States v. Brunick*, 374 F. App'x 714, 716 (9th Cir.) (unpublished) (concluding that the defendant's arrest for carrying a concealed weapon, a knife, did not give rise to a reason to believe evidence would be found in the defendant's vehicle because there was no likelihood of finding additional evidence related to the offense for which the defendant was arrested; however, vehicle search allowed under inventory search exception), *cert. denied*, —— U.S. ——, 131 S. Ct. 355, 178 L. Ed. 2d 230 (2010).

Even though we conclude that the search of defendant's vehicle was constitutionally permissible, we stress that we are not holding that an arrest for carrying a concealed weapon is *ipso facto* an occasion that justifies the search of a vehicle. We believe that the "reasonable to believe" standard required by *Gant* will not routinely be based on the nature or type of the offense of arrest and that the circumstances of each case ordinarily will determine the propriety of any vehicular searches conducted incident to an arrest.

The decision of the Court of Appeals is reversed, and that court is instructed to reinstate the trial court's denial of defendant's motion for appropriate relief.


REVERSED.


Justice TIMMONS-GOODSON dissenting.

Defendant was arrested for carrying a concealed weapon after telling police he had a gun in his waistband. He then was handcuffed and secured in the back of a police car. Next, rather than seek a warrant, law enforcement conducted a warrantless search of defendant's vehicle. The majority condones this search, but I must respectfully dissent. There was no reason to believe defendant's vehicle contained evidence that he was carrying a concealed weapon, and the majority unjustifiably rewrites Fourth Amendment jurisprudence set forth by the Supreme Court of the United States.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment," save a "few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 173 L. Ed. 2d 485, 493 (2009) (citation and quotation marks omitted). In *Gant*, the Supreme Court carved out one such exception, which permits police officers

to search a vehicle incident to a lawful arrest "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343, 173 L. Ed. 2d at 496 (citation and quotation marks omitted). In the same breath that it declared this exception, the Supreme Court recognized that "[i]n many cases . . . there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* (citations omitted). This is one of those "many cases."

At the time police officers searched defendant's vehicle, there was no reason to believe it contained evidence relevant to the crime of arrest—carrying a concealed weapon.[1] First, defendant lowering his hands toward his waist may suggest that defendant had a gun, but this action did not indicate that his vehicle contained evidence of carrying a concealed weapon. After all, if defendant was lowering his hands to hide something, he would be trying to hide his weapon—the weapon he relinquished to police. Similarly, that a 911 caller identified defendant as the man who shot up his house the night before does not suggest that defendant's car contained evidence that he was carrying a concealed weapon. Finally, the majority contends that defendant, by closing his vehicle door, gave the officers reason to believe the automobile contained evidence of the offense of arrest. This reasoning dangerously undermines the right to privacy. On the one hand, if defendant closes the vehicle door when complying with an officer's order to exit the vehicle, then law enforcement, under today's opinion, can search the car. On the other hand, if defendant leaves the door open, officers can conduct a broader plain view search of the passenger compartment. Protecting one's privacy from police searches by closing a vehicle door does not give rise to a reasonable belief to justify a warrantless search.[2]

The majority attempts to mollify concerns about the breadth of today's opinion by stating that the weapons charge does not *ipso facto* justify the warrantless search. But without an explanation of how the facts actually create a reasonable belief that relevant evidence is located in defendant's vehicle, the Court's opinion does exactly what it purports to avoid—permit a warrantless search based

---

1. North Carolina law generally prohibits the intentional carrying of a concealed handgun off of one's own property. N.C.G.S. § 14-269 (a1) (2011).

2. I also disagree with the majority's suggestion that the Fourth Amendment permits officers to search the passenger compartment of a defendant's vehicle when the secured defendant has an air of "furtiveness" surrounding him. The majority's "furtiveness" argument has no precedent in Fourth Amendment jurisprudence.

STATE v. MBACKE

[365 N.C. 403 (2012)]

upon the nature of the offense.[3] The absence of facts in this case suggesting that defendant's vehicle contained evidence of the crime of arrest signals that the Court will permit the search of an arrestee's vehicle in any concealed weapons case. In my view, the Court reads the *Gant* exception too broadly and allows searches beyond the scope contemplated by the Supreme Court. At the same time, the majority opinion's lack of specificity leaves law enforcement without a clear fact pattern for comparison with other scenarios. Officers, thinking they have complied with this opinion, may conduct vehicle searches only to have the fruits of those searches excluded from trial.

In addition to the majority's misapplication of *Gant* to the facts of this case, I disagree with the majority's decision to equate the "reasonable, articulable suspicion" standard described in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), with the reasonable belief requirement set forth in *Gant*. First, as a threshold matter, the majority fails to establish that the *Gant* phrase "reasonable to believe" needs clarification. The Supreme Court thought this phrase was adequately instructive to law enforcement, and so do I. This phrase is meaningful to judges, lawyers, and police officers alike. As the saying goes, "If it ain't broke, don't fix it."

Second, the Supreme Court was well aware of the *Terry* standard when it authored *Gant* in 2009, yet it chose to adopt a reasonable belief standard, not the "reasonable, articulable suspicion" standard of *Terry*. I would not import *Terry* jurisprudence into the *Gant* analysis without direction from the Supreme Court.

Third, contrary to the assertion by the majority, law enforcement's familiarity with the *Terry* standard will not make the application of *Gant* by law enforcement officers "straightforward." Officers' experience applying *Terry* is irrelevant to answering the question at hand: whether it is reasonable to believe that defendant's vehicle contains evidence of the offense of arrest. Substituting the *Terry* standard confuses the matter by conflating different areas of Fourth Amendment jurisprudence, stop and frisk compared with a search incident to arrest. In short, the majority's substitution of the *Terry* standard for the standard chosen by the Supreme Court in *Gant* introduces confusion with no benefit.

---

3. The Court compounds this problem by emphasizing that its opinion is consistent with decisions in other jurisdictions in that "an offense involving weapons . . . , by its nature, ordinarily makes it reasonable to believe that the defendant's car will contain evidence of that offense, so that searching a defendant's car incident to an arrest for a weapons offense is almost always consistent with the Fourth Amendment."

**COBB v. TOWN OF BLOWING ROCK**

[365 N.C. 414 (2012)]

Finally, I also must point out that the majority offers absolutely no authority to support its rewriting of Fourth Amendment jurisprudence. The majority cites to *United States v. Place*, 462 U.S. 696, 702, 77 L. Ed. 2d 110, 117-18 (1983), as support for its proposition that "the underlying concept of a reasonable articulable suspicion discussed in *Terry* . . . is readily adaptable to a scenario in which a search of a vehicle is contemplated after the occupants have been arrested and detained." Place, however, offers no support for this proposition, as it permits dogs to sniff luggage for narcotics and does not address the search of a vehicle incident to arrest. *Id.* at 706, 77 L. Ed. 2d at 120.

Today's opinion is especially troublesome because there was plenty of time to seek a warrant. Defendant was secured, and neither officer safety nor evidence preservation was a concern. Further, there was no reason to believe that defendant's vehicle contained evidence relevant to his arrest for carrying a concealed weapon. As a result, the decision of the majority to rewrite Fourth Amendment jurisprudence set forth by the Supreme Court of the United States is unwarranted and unhelpful. This revision to constitutional law unfortunately diminishes the Fourth Amendment rights guaranteed to our state's citizens with no benefit to the interests of law enforcement.