STATE OF NORTH CAROLINA v. ALVIN MICHAEL WATKINS

No. COA11-1176

(Filed 1 May 2012)

**Search and Seizure— motion to suppress—reasonable suspicion to stop vehicle—search incident to arrest—probable cause—warrantless search**

The trial court did not err in a drug case by denying defendant's motion to suppress evidence seized during a warrantless search of the vehicle he was driving. The police officers had rea-

STATE v. WATKINS

[220 N.C. App. 384 (2012)]

sonable suspicion to stop defendant's vehicle and the search of the vehicle was a valid search incident to the arrest of defendant's passenger for his possession of drug paraphernalia. Moreover, the objective circumstances provided the officers with probable cause for a warrantless search of the vehicle.

Appeal by defendant from judgment entered 19 January 2011 by Judge Alan Z. Thornburg in Graham County Superior Court. Heard in the Court of Appeals 20 February 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Michael E. Casterline for defendant-appellant.*

HUNTER, Robert C., Judge.

Alvin Michael Watkins ("defendant") appeals from the denial of his motion to suppress evidence seized during a warrantless search of the vehicle he was driving. After careful review, we affirm.

## Background

On 30 December 2009, the Graham County Sheriff's Office received an anonymous tip that a vehicle containing "a large amount of pills and drugs" would be traveling from Georgia through Macon County and possibly Graham County. The vehicle was described as a small or mid-sized passenger car, maroon or purple in color, with Georgia license plates. The caller was unable to say how many people would be in the car or what specific contraband it would be carrying. Officer Travis Brooks and Detective Jeremy Spencer ("the officers"), the department's narcotics investigators, decided the most likely route for the vehicle would be along NC Highway 28. Both men were experienced officers with specific training in narcotics investigation. The officers set up surveillance of NC Highway 28 that night in a single unmarked vehicle but did not see any vehicles matching the description given by the anonymous informant.

The next morning the officers again set up surveillance along NC Highway 28 near the Swain/Graham County line, this time in combination with officers from Swain County and the Cherokee Tribal Police. Graham County's canine handler, Officer Brian Stevens, was on standby. The officers followed several vehicles they considered to be a possible match to the description provided by the anonymous informant. At approximately 1:30 p.m. the officers were informed by

Officer Jason Gardener, who was conducting surveillance of NC Highway 28 in Swain County, that a small purple Chevrolet was approaching.

As the vehicle passed, the officers pulled out approximately three or four car lengths behind it to confirm that it was bearing Georgia license plates. As the officers' vehicle entered the highway, the Chevrolet made an abrupt lane change into the left lane without signaling and slowed down by approximately five to 10 miles per hour. The driver then maintained a speed below the speed limit and remained in the passing lane. Detective Spencer recognized this behavior by the driver as an attempt to avoid being stopped.

The officers ran the vehicle's license plate and discovered the vehicle was registered to Christopher Corey Jackson ("Jackson"). Jackson was a former resident of Graham County who was known to the officers to have outstanding arrest warrants. Although the officers were "pretty sure" that the driver of the vehicle was not Jackson, they were unable to see who was sitting in the passenger seat. They also observed that the driver appeared "really nervous," repeatedly looking in his rearview mirrors and glancing over his shoulder. The officers pulled the vehicle over for a traffic stop.

After coming to a stop the driver of the Chevrolet, later identified as defendant, got out of the vehicle, and approached the officers' car. Officer Brooks testified that he was trained to recognize that a driver exiting a vehicle and approaching an officer after being stopped is a sign "there's something in the vehicle that's illegal[.]" The officers asked defendant to get back in the vehicle but he refused to do so and stated that he did not have an active driver's license. The officers observed that defendant appeared nervous and that he was repeatedly looking into the vehicle and back at the officers. Officer Brooks informed defendant that he had been pulled over due to his lane change without signaling and because the car was registered to a person with outstanding arrest warrants. Detective Spencer walked around to the passenger side of the vehicle to talk to the passenger. The passenger identified himself as Henry Conway Watkins ("Conway"), defendant's brother.

Detective Spencer observed Conway putting something in his pocket as the officers approached. The officers patted down both occupants with their consent and found a metallic marijuana pipe in Conway's pocket. Detective Spencer placed Conway in custody for possession of drug paraphernalia.

Approximately five minutes after the Chevrolet was stopped, Officer Stevens arrived with Graham County's drug-sniffing dog. He waited less than two minutes for the other officers to move defendant and his brother away from the vehicle before leading the dog around the vehicle. On sniffing the exterior of the vehicle, the dog alerted at one of the rear passenger doors indicating the presence of narcotics. Officer Stevens opened the rear passenger door and placed the dog inside the vehicle. The dog attempted to climb under the front passenger seat and gave clear indications of narcotic odor. Officer Stevens testified that the dog was trained to detect the presence of narcotic odor including marijuana, methamphetamine, heroin, cocaine, and synthetic derivatives thereof, including opiate-based prescription pills, with a detection rate of 96 to 97 percent.

On the basis of the dog's alert and the pipe found in Conway's pocket, the officers decided to search the Chevrolet. Chief Deputy Gardener from Swain County searched the passenger side of the vehicle and found a brown grocery bag under the passenger seat that was tied closed and that contained pill bottles. The bag contained four large bottles of prescription narcotics; one bottle contained 23 pills and three bottles contained 80-100 pills each. Defendant and Conway denied any knowledge of the contents of the bag. However, defendant stated that he was on his way to meet someone to exchange the bag for $900 and half of an ounce of marijuana.

Defendant was issued a warning ticket for changing lanes without signaling. However, defendant was arrested and indicted for: two counts of trafficking in opium or heroin; maintaining a vehicle used for keeping and selling a controlled substance; felony possession of a Schedule II controlled substance; felony possession with intent to deliver a Schedule II controlled substance; felony possession of a Schedule III controlled substance; felony possession with intent to deliver a Schedule III controlled substance; and for driving while his license was revoked. Defendant moved to suppress all evidence recovered during the traffic stop on the basis that the officers had acted unconstitutionally in stopping and searching his vehicle. A hearing was held on the suppression motion before Judge Alan Z. Thornburg in Graham County Superior Court on 18 January 2011. At the conclusion of the hearing, the trial court denied the motion.

Following the denial of his suppression motion, defendant pled guilty to two counts of trafficking in opium and one count each of: possession with intent to deliver Schedule III controlled substances; felony possession of Schedule III controlled substances; maintaining

a vehicle used for keeping and selling a controlled substance; felony possession of Schedule II controlled substances; possession with intent to deliver Schedule II controlled substances; and driving while license revoked. All charges were consolidated into one charge and judgment entered for level II trafficking in opium; defendant was sentenced to a term of 90 to 117 months imprisonment and fined $100,000.00. Defendant appeals the denial of his motion to suppress.

## Discussion

Pursuant to N.C. Gen. Stat. § 15A-979(b) (2011), "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." Such an appeal is permitted, however, only where the defendant has indicated his intent to appeal before the plea negotiations are finalized. *State v. Reynolds*, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979). Upon review of the record and the transcript of the hearing on defendant's motion, it is unclear whether defendant gave notice of appeal. While there are ample facts to indicate that both the State and the trial court were aware of defendant's intent to appeal, we grant defendant's petition for writ of certiorari.

The scope of review on appeal of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Conclusions of law, however, are reviewed *de novo*. *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005).

N.C. Gen. Stat. § 15A-977(f) (2011) states that in ruling on a motion to suppress evidence "[t]he judge must set forth in the record his findings of facts and conclusions of law." In interpreting this statute, our Supreme Court has held that "[i]f there is no material conflict in the evidence on voir dire, it is not error to admit the challenged evidence without making specific findings of fact[.]" *State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980). This is because "the necessary findings are implied from the admission of the challenged evidence." *Id.*

Upon denial of defendant's motion to suppress the trial court did not make oral findings of facts or conclusions of law, but requested the State to prepare a written order. The order does not appear in the

record. However, we do not reach this issue as defendant makes no argument regarding the lack of a written order. *See* N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."); *State v. McCain*, ____ N.C. App. ____, ____ n.3, 713 S.E.2d 21, 27 n.3 (2011) (citing N.C. R. App. P. 28(a) and declining to address the lack of a written order denying the defendant's motion to suppress where the defendant did not raise the issue on appeal). Additionally, although the trial judge did not make any specific findings of fact, the facts were not materially disputed. Rather, defendant argues the trial court erred as a matter of law in denying his motion to suppress.

Defendant first argues that the trial court erred by denying his motion to suppress the evidence found during the search of the vehicle because the officers were not justified in stopping the vehicle. We disagree.

The federal constitution protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A traffic stop is a "seizure" under the Fourth Amendment that may be held constitutional if based upon a reasonable suspicion that criminal activity is afoot. *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)). Reasonable suspicion requires " '[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.' " *Id.* (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)).

In *Styles*, our Supreme Court concluded that a police officer's observation of the defendant's unsignaled lane change, in violation of N.C. Gen. Stat. § 20-154(a) (2007), satisfied the reasonable suspicion standard required to stop the defendant's vehicle. *Id.* at 416-17, 665 S.E.2d at 441; *see* N.C. Gen. Stat. § 20-154(a) (2011) (requiring driver of a vehicle to give a signal before turning from a direct line of travel "whenever the operation of any other vehicle may be affected by such movement"). However, the defendant in *Styles* committed the traffic violation immediately in front of the police officer's vehicle, thereby making apparent the potential effect of the lane change on another vehicle. *Id.; see State v. McRae*, 203 N.C. App. 319, 323, 619 S.E.2d 56, 59 (2010) (holding that an unsignaled lane change on a road with "medium" traffic and executed a short distance in front of the police

officer's car justified a traffic stop). Here, the State's evidence established the officers were following three to four car lengths behind defendant's vehicle when he changed lanes. While Officer Brooks testified that shortly after the stop there was "heavy traffic" on the road with "a lot of vehicles going by," there are insufficient facts in the record to determine whether the lane change may have affected another vehicle. Indeed, the officers only issued defendant a warning ticket for " 'conduct constituting a potential hazard to the motoring public which does not amount to a clear-cut, substantial violation of the motor vehicle laws.' "

Assuming, *arguendo*, that defendant's unsignaled lane change was not sufficient to justify the traffic stop, the lane change in combination with the anonymous tip and defendant's other activities were sufficient to give an experienced law enforcement officer reasonable suspicion that some illegal activity was taking place: defendant's slow speed while driving in the passing lane, his frequent glances in his rearview mirrors, his repeated glances over his shoulder, and that he was driving a car registered to another person. *See State v. Fisher*, ____ N.C. App. ____, ____, ____ S.E.2d ____, ____, 2012 WL 924885 at *4 (No. COA11-980) (Mar. 20, 2012) (noting that the defendant's nervousness and the fact the he was driving a car registered to another person were "appropriate factor[s] to consider in a reasonable suspicion analysis" (citing *State v. Euceda-Valle*, 182 N.C. App. 268, 274-75, 641 S.E.2d 858, 863 (2007))). Moreover, not only was defendant not the owner of the vehicle, but the owner was known by the officers to have outstanding arrest warrants. It was reasonable to conclude that the unidentified passenger may have been the owner of the vehicle. Taken together these facts provided reasonable suspicion to justify the stop of defendant's vehicle. Defendant's argument is overruled.

Defendant next argues that even if the stop of his vehicle was proper, under the holding of *Arizona v. Gant*, 556 U.S. 332, 351, 173 L. Ed. 2d 485, 501 (2009), the search of the vehicle was not constitutional as he did not have access to the vehicle at time of the search and it was not reasonable for the officers to believe they would find evidence of the crime for which he was arrested. Although the record indicates that defendant was not arrested until after the search of the vehicle, we conclude the search was a valid search incident to the arrest of defendant's passenger for his possession of drug paraphernalia.

In *Gant*, the United States Supreme Court held that the federal constitution authorizes police to "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching dis-

tance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* The North Carolina Supreme Court recently applied the holding of Gant in *State v. Mbacke*, ____ N.C. ____, ____, 721 S.E.2d 218, 222 (2012), and concluded that the "reasonable to believe" standard set forth in *Gant* "parallels" the reasonable suspicion standard necessary to justify a *Terry* stop. *Id.* at ____, 721 S.E.2d at 222. Thus, "when investigators have a reasonable and articulable basis to believe that evidence of the offense of arrest might be found in a suspect's vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a [warrantless] search of that vehicle." *Id.*

The holdings of *Gant* and *Mbacke* do not distinguish between the arrest of the driver or a passenger, instead referring only to an "occupant." *Gant*, 556 U.S. at 351-52, 173 L. Ed. 2d at 501-02 (Scalia, J., concurring) ("[W]e are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested."); *Mbacke*, ____ N.C. at ____, 721 S.E.2d at 222. Therefore, we apply the same standard to a search incident to the arrest of a passenger. We conclude the officers had a reasonable belief that evidence relevant to Conway's possession of drug paraphernalia might be found in the vehicle, and thus the search of the vehicle was constitutional.

Moreover, we conclude the objective circumstances of this case provided the officers with probable cause for a warrantless search of the vehicle. In *Gant*, the Court cited *United States v. Ross*, 456 U.S. 798, 809, 72 L. Ed. 2d 572, 584 (1982), which allows a search of a vehicle if the search is "based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *See Gant*, 556 U.S. at 347, 173 L. Ed. 2d at 498 (noting that if there is "*probable cause* to believe a vehicle contains evidence of criminal activity," then "*Ross* allows searches for evidence relevant to offenses *other than the offense of arrest*, and the scope of the search authorized is broader" (emphasis added)). As stated in *Ross*, the scope of such a warrantless search is limited by "the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824, 72 L. Ed. 2d at 593. Here, the drug paraphernalia found on defendant's passenger, the anonymous tip, the outstanding arrest warrants for the car's owner, defendant's nervous behavior while driving and upon exiting the vehicle, and the alert by the drug-sniffing dog provided probable cause for the warrantless search of the vehicle. *See State v. Washburn*, 201 N.C. App. 93, 100,

685 S.E.2d 555, 560 (2009) ("[A] positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts."), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010). Defendant's argument that the warrantless search of the vehicle was unconstitutional is overruled.

## Conclusion

For the reasons stated above, we conclude that the trial court did not err in denying defendant's motion to suppress.

Affirmed.

Chief Judge MARTIN and Judge STEPHENS concur.