An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-781

Filed 15 April 2026

Guilford County, Nos. 23CR028456-400, 23CR399568-400, 23CR399571-400

STATE OF NORTH CAROLINA

v.

PAUL BENTHALL, III

Appeal by Defendant from order entered 20 February 2025 and judgments entered 26 February 2025 by Judge William A. Wood, II, in Guilford County Superior Court. Heard in the Court of Appeals 24 March 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Alex R. Williams, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Paul Benthall appeals from an order denying his motion to suppress and judgments entered upon a jury's guilty verdicts of possession of a firearm by a felon and possession of cocaine, and Defendant's guilty plea to attaining habitual felon status. Defendant argues that the trial court erred by denying his motion to

suppress, and that the charge of possession of a firearm by a felon under N.C. Gen. Stat § 14-415.1 is unconstitutional both facially and as applied. Because competent evidence supports the trial court's findings of fact and those findings support its conclusion that the officer had reasonable suspicion to believe Defendant had violated N.C. Gen. Stat. § 20-154(a), we affirm the denial of the motion to suppress. Defendant has failed to preserve his constitutional argument for appellate review, and that portion of his appeal is dismissed.

## I. Background

Defendant was indicted for various crimes as a result of items found during a search of his car. Prior to trial, Defendant moved to suppress all evidence seized as a result of the search, arguing that law enforcement's stop of his car was not supported by reasonable suspicion. A suppression hearing was held where Sergeant J.L. Matthews was the sole witness. The evidence presented at the suppression hearing tended to show the following:

Matthews was conducting surveillance at the Cavalier Inn, an area he described as a "high-frequency narcotics location[.]" After seeing what he believed was a hand-to-hand drug transaction, Matthews began following Defendant's car. He did not stop Defendant based on the suspected transaction; instead, he continued following him to determine whether Defendant would commit a traffic violation, which would justify a stop.

After following Defendant for approximately six miles, Matthews saw him

change lanes twice on Yanceyville Street, a street with two lanes of traffic in each direction, without signaling. At the time, Matthews was "[n]o more than 30 to 50 yards" or "seven to ten car lengths" behind Defendant in one northbound lane; another officer, Detective Pacific, was in the adjacent northbound lane. Matthews testified that "multiple other vehicles" were traveling northbound, though he could not recall their specific locations. He further testified Defendant's unsignaled lane changes "potentially could have affected multiple other cars on the road." Matthews initiated a traffic stop for allegedly failing to use a traffic signal, in violation of N.C. Gen. Stat. § 20-154(a).

The trial court found Matthews credible; found Defendant had made two unsignaled lane changes while other vehicles, including two police vehicles, were traveling behind him in the same direction; and concluded Defendant had a duty to signal under section 20-154(a). The trial court thus concluded Matthews had reasonable suspicion to initiate the traffic stop and denied the motion to suppress.

The jury convicted Defendant of possession of a firearm by a felon and simple possession of cocaine and acquitted Defendant on all other charges. Defendant then pled guilty to having attained habitual felon status. Defendant timely appealed.

## II. Discussion

### A. Motion to Suppress

Defendant argues that the trial court erred by denying his motion to suppress because the evidence and the trial court's findings fail to support a conclusion that

Matthews had a reasonable suspicion that Defendant had failed to use a traffic signal, in violation of N.C. Gen. Stat. § 20-154(a).

"When reviewing a ruling on a motion to suppress, we analyze whether the trial court's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the trial court's ultimate conclusions of law." *State v. Johnson,* 370 N.C. 32, 35 (2017) (cleaned up). Conclusions of law are reviewed de novo. *State v. Watkins,* 220 N.C. App. 384, 388 (2012).

Traffic stops are reviewed under the reasonable suspicion standard which requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). The reasonable suspicion standard need only be "satisfied by some minimal level of objective justification" for the stop. *State v. Styles,* 362 N.C. 412, 414 (2008) (quotation marks and citation omitted).

Under N.C. Gen. Stat. § 20-154(a), a driver must signal a turn or lane change when "the operation of any other vehicle may be affected by such movement." N.C. Gen. Stat. § 20-154(a) (2025). The duty to signal arises when another vehicle *may* be affected–not only when another vehicle is actually affected. *See Styles*, 362 N.C. at 416-17.

In *Styles*, the defendant's failure to signal a lane change "immediately in front

of" a patrol car provided reasonable suspicion of a section 20-154(a) violation because such a movement "may affect" the trailing vehicle. *Id.* Similarly, in *State v. McRae*, the officer had reasonable suspicion to stop the defendant based on his failure to use his turn signal. 203 N.C. App. 319, 323 (2010). There "defendant was traveling, before his turn, in a through lane with 'medium' traffic and was a short distance in front of the police officer." *Id.* We held "[t]he trial court did not err in concluding that a reasonable officer would have believed, under these circumstances, that the failure to use a turn signal could have affected another motor vehicle." *Id.*

Although Defendant here was not "immediately" in front of Matthews, the trial court found, and the record supports, that Defendant was seven to ten car lengths in front of Matthews–close enough for Matthews to clearly observe the lane changes; Defendant was traveling ahead of two police vehicles, both of which were in the same direction of travel; other vehicles were also traveling northbound; and Defendant executed two lane changes without signaling. The trial court was entitled to credit Matthew's testimony that Defendant's lane changes "potentially could have affected multiple other cars on the road" and to conclude Defendant's failure to use a turn signal "might affect the operation of another vehicle."

Defendant relies on *State v. Ivey*, where the Supreme Court held the officer did

not have probable cause[1] to believe the defendant had violated N.C. Gen. Stat. § 20-154(a). 360 N.C. 562, 565 (2006), *abrogated by Styles,* 362 N.C. at 415 n. 1. (clarifying that the standard for a stop is reasonable suspicion, not probable cause). There, the officer followed the defendant "at some distance" and stopped the defendant when he turned right at a stop sign without signaling. *Id.* The Court explained that "[t]he record d[id] not indicate that any other vehicle or any pedestrian was, or might have been, affected by the turn" and the officer's "vehicle could not have been affected by defendant's maneuver" because turning right was "the only legal movement he could make at the intersection." *Id.*

Defendant also relies on *State v. Watkins* where there were insufficient facts in the record to determine whether the defendant's lane change "may have affected another vehicle." 220 N.C. App. at 390. There, "officers were following three to four car lengths behind defendant's vehicle when he changed lanes[,]" and an officer testified only that there was "heavy traffic" after the stop, not at the time of the lane change. *Id.*

This case is materially different from *Ivey* and *Watkins*. Defendant was traveling on a multi-lane road with multiple legal movement options. His unsignaled

---

[1] "Although [the Court] used the term 'probable cause' in *Ivey*, the facts of that case make it clear that the officer did not have probable cause or reasonable suspicion to stop the defendant's vehicle." *Styles,* 362 N.C. at 415 n. 1. "To the extent language in *Ivey* may be interpreted as requiring probable cause, [the Court] specifically disavow[s] that interpretation" and clarifies that "probable cause is sufficient, but not necessary for a traffic stop." *Id.* at 415-16 n. 1.

lane changes required trailing vehicles to anticipate lateral movement across lanes. Unlike in *Ivey*, the officers here were not required to stop or maintain a fixed position; they were actively following Defendant in moving traffic. And in contrast to *Watkins*, the trial court here found Matthews and Pacific were both trailing Defendant's vehicle in the two northbound lanes, and other vehicles were also traveling northbound at the time of Defendant's unsignaled lane changes rather than after the stop. The trial court's findings are supported by competent evidence and distinguish this case from *Ivey* and *Watkins*.

The trial court's findings support its legal conclusion. The trial court found Defendant had made two unsignaled lane changes while multiple vehicles, including two police vehicles, were traveling behind him in the same direction. Those findings support the conclusion that Defendant had a duty to signal under section 20-154(a) because his movements may have affected the operation of other vehicles.

Given the low threshold for reasonable suspicion and for a violation of section 20-154(a), and the deference owed to the trial court's factual findings, the trial court correctly concluded that Matthews had reasonable suspicion to initiate the stop.

## B. Possession of a Firearm by a Felon

Defendant next argues, for the first time on appeal, that his conviction for possession of a firearm by a felon under N.C. Gen. Stat. § 14-514.1 unconstitutionally burdens his right to bear arms under the Second Amendment and Article I, §30 of the Constitution of the United States.

Defendant has failed to preserve this issue for appellate review. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). "It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." *Id.* Further, "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal" by this Court. *State v. Lloyd*, 354 N.C. 76, 86-87 (2001).

Defendant did not present his constitutional argument to the trial court during trial. Accordingly, Defendant did not preserve this issue for our review.

### III. Conclusion

Competent evidence supports the trial court's findings, and those findings support its conclusion that Matthews had reasonable suspicion to believe Defendant had violated section 20-154(a). The trial court did not err by denying the motion to suppress. Defendant has failed to preserve his constitutional argument for appellate review, and that portion of his appeal is dismissed.

AFFIRMED IN PART; DISMISSED IN PART.

Judges TYSON and FREEMAN concur.

Report per Rule 30(e).